THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>MARK SAHADY,<br><br>       Defendant. | Case No. 1:21-cr-00134 (CJN) |

### MR. SAHADY'S MEMORANDUM OF LAW IN SUPPORT OF HIS SELECTIVE PROSECUTION CLAIM

  In the United States, the government's discretion in enforcing its criminal laws is undisputedly "subject to constitutional constraints." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Based on the information currently available to the public and Mr. Sahady there is currently "*some* evidence tending to show the existence"[1] that the government has violated these constraints in prosecuting Mr. Sahady in the manner that it is.

  More specifically, there is evidence that the government is unconstitutionally prosecuting Mr. Sahady as a result of his political affiliation. This unconstitutional prosecution is demonstrated by the substantial difference in the government's prosecution of Mr. Sahady—a conservative who allegedly trespassed on the Capitol while protesting events harmful to his beliefs—compared to the government's prosecution of rioters in Portland, Oregon in 2020—liberals who were violently protesting circumstances harmful to their beliefs. For the reasons explained below, Mr. Sahady now requests a Motion to Compel discovery so that this unconstitutional prosecution may be fully litigated for this Court.

---

[1] *Armstrong*, 517 U.S. at 468 (emphasis added).

1

**STATEMENT OF FACTS**

### I. TRESPASS ALLEGATIONS AGAINST MR. SAHADY

Mr. Sahady is charged in a three-count Criminal Complaint based on his alleged conduct near and/or inside the United States Capitol on January 6, 2021. ECF No. 1. As has been extensively covered by the media, on January 6, 2021, Mr. Sahady along with other January 6 defendants were protesting the November 2020 presidential election, where Democrat Joe Biden was declared the winner over incumbent Republican Donald Trump. ECF No. 1-1. Many individuals, including Mr. Sahady, are alleged to have entered the United States Capitol building during a protest of the presidential election results. *See id.* Mr. Sahady, along with the other January 6 defendant Republicans, are currently being prosecuted by Joe Biden's Democratic administration.

The government alleges in the Criminal Complaint that Mr. Sahady was an individual "inside the U.S. Capitol building without authority to be there," and that Mr. Sahady generally was not acting orderly while he was inside the Capitol. ECF No. 1-1 at 2-6. Importantly, the Criminal Complaint states nothing about Mr. Sahady engaging in any violent behavior. *See id.* Indeed, in the three photographs in the Criminal Complaint alleged to capture Mr. Sahady, Mr. Sahady is merely photographed standing, smiling, and/or holding a "thumbs up" in a peaceful manner. *See* ECF No. 1-1.

### II. VIOLENT ALLEGATIONS AGAINST OREGON RIOTERS

#### A. The General Events

The general events of January 6 in Washington, D.C., are directly comparable to the general events in Portland, Oregon, in 2020. Specifically, many individuals in Oregon rioted outside the Mark Hatfield Federal Courthouse in Portland during the summer of 2020. Importantly, just as the January

6 protest centered around a core issue important to conservatives—the 2020 presidential election—the riots in Oregon centered around a core issue important to liberals—police violence.

The riots in Oregon erupted after the death of George Floyd at the hands of police officers in May 2020. These riots lasted for several months. *See* Gillian Flaccus, *Portland's grim reality: 100 days of protests, many violent*, AP NEWS (September 4, 2020).[2] Countless people gathered in Oregon on a nightly basis, taking actions such as vandalizing the federal courthouse and assaulting the federal agents guarding the federal structure. *See id.* Federal officers would often respond with necessary aggressive means, such as using tear gas and rubber bullets to halt the rioters, but the riots continued, causing havoc. *See generally* Giulia McDonnell Nieto del Rio, *What Do Portland Protesters Want, and How Have the Police Responded?*, THE NEW YORK TIMES (June 18, 2021)[3]; Mike Baker, *Chaotic Scenes in Portland as Backlash to Federal Deployment Grows*, THE NEW YORK TIMES (June, 2021)[4]; Mike Balsamo & Gillian Flaccus, *On Portland's Street: Anger, fear, and a fence that divides*, AP NEWS (July 27, 2020).[5]

The government has confirmed that there was "nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault." *United States v. Bouchard,* case no. 3:20-mj-00165 (D. Ore. July 24, 2020), ECF No. 1-1 at 4–5. Indeed, the federal buildings "experienced significant damage,"[6] and "federal law enforcement officers [were] subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown

---

[2] https://apnews.com/article/virus-outbreak-ap-top-news-race-and-ethnicity-id-state-wire-or-state-wire-b57315d97dd2146c4a89b4636faa7b70.

[3] https://www.nytimes.com/article/portland-protests-explained-protesters.html.

[4] https://www.nytimes.com/2020/07/21/us/portland-protests.html.

[5] https://apnews.com/article/virus-outbreak-ap-top-news-race-and-ethnicity-music-or-state-wire-1dd1bb39093a3691f4e78093787ab877.

[6] Damage has been estimated in the millions. *See* Tom Batchelor, *Portland Protesters Have Caused $2.3 Million in Damage to Federal Buildings*, NEWSWEEK (February 4, 2021), https://www.newsweek.com/portland-protesters-damage-cost-federal-buildings-1566821.

rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties." *Id*. Further, in many instances the defendants in Oregon specifically used "violent means like Molotov cocktails or arson." *United States v. Brock*, No. 21-140 (JDB), 2022 U.S. Dist. LEXIS 156672, at *33 (D.D.C. Aug. 31, 2022).

### B. Specific Violent Defendants And Their Case Dismissals

Crucially, not only were the general circumstances between the Oregon riots and the January 6 protests similar, but the specific allegations against many defendants were far worse than the specific allegations against Mr. Sahady. For example, one defendant, after ignoring orders from the police, "placed his right arm around the neck of [federal] officer 1 in headlock maneuver," and when another officer came to "remove [defendant's] right arm from around the neck of [federal] Officer 1… all three individuals went to the ground." *Bouchard*, ECF No. 1-1 at 6. At this time, this defendant was also "carrying a leaf blower and a shield." *Id.* Importantly, this defendant who trespassed on federal property, ignored federal officer orders, and assaulted a federal officer while carrying multiple dangerous objects, had his charges dismissed by the government. *Bouchard*, ECF No. 16.

As another example, a second defendant "used a homemade shield to strike [an] officer in the face." *United States v. Johnson*, case no. 3:20-mj-00170 (D. Ore. July 27, 2020), ECF No. 1 at 5. After searching the defendant, police discovered an "extendable baton, OC spray, steel plated body armor, helmet, individual first aid kid, shin guards, gas mask, goggles…" *Id.* at 6. Remarkably, again, the government subsequently moved to dismiss these charges. *Johnson*, ECF No. 9.

As a final example, a third defendant violently "struck [a federal officer] in the face with a shield and then punched [the federal officer] in the face with a closed fist." *United States v. Webb*, case no. 3:20-mj-00169 (D. Ore. July 27, 2021) ECF No. 1 at 5. This defendant then "resisted arrest by pulling his arms away from the [federal officer] in an attempt to avoid being restrained." *Id.* at 5-

6. Once again, remarkably, the government subsequently moved to dismiss the charges. *Webb*, ECF No. 22.

### C. General Defendants And Their Case Dismissals

As has been noted by Judges of this Court in other matters,[7] the data of the overall prosecution of the Oregon rioters compared to the data of overall prosecution of the January 6 protesters indeed "suggests that Portland defendants generally received much lighter treatment than" Mr. Sahady and other January 6 protestors, especially when considering that the government does not allege Mr. Sahady acted violently. *United States v. Judd*, 579 F. Supp. 3d 1, 5 (D.D.C. 2021). In fact, "the Court knows of only one January 6 case that the Government has dismissed among the hundreds of defendants charged for their alleged actions on that day," *Judd*, 579 F. Supp. 3d at 7 n.7, whereas the "Government dismissed 27 cases brought against Portland defendants, including five felony cases," which this Court agreed was "downright rare and potentially suspicious." *Id.* at 7.

This "downright rare and potentially suspicious" discrepancy between the Oregon defendants and January 6 defendants, especially those such as Mr. Sahady who did not act violently, forms the basis of Mr. Sahady's request to compel discovery.

## STATEMENT OF LAW

Based on the charging decisions by the government against Mr. Sahady compared to the government's charging decisions against specific violent defendants, and general defendants, involved in the violent riots in Oregon, Mr. Sahady has demonstrated "at least a colorable claim" of selective prosecution, and he is therefore entitled to discovery in this matter.

---

[7] This Court may take judicial notice of public filings in other cases in this District. *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("A court may take judicial notice of facts contained in public records of other proceedings[.]") (citing *Covad Communs. Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222, 366 U.S. App. D.C. 24 (2005)).

5

The government's discretion in enforcing the United States' criminal laws is "subject to constitutional constraints." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification[.]" *Id.* at 464. (citations omitted). An arbitrary classification includes a defendant's "political beliefs." *Branch Ministries v. Rossotti*, 40 F. Supp. 2d 15, 21 (D.D.C. 1999), *aff'd* 211 F.3d 137 (D.C. Cir. 2000). Consequently, when the government violates this Constitutional constraint by deciding to prosecute a defendant based on political beliefs, as Mr. Sahady alleges here, a defendant may assert a "selective-prosecution claim." *Armstrong*, 517 U.S. at 463.

A selective prosecution claim has two elements. First, a defendant must establish that the prosecutorial policy "had a discriminatory effect." *Armstrong*, 517 U.S. at 465. To show that effect, a defendant must show that the Government afforded "different treatment" to persons "similarly situated" to him. *Id.* at 470. To demonstrate that others were "similarly situated," there must be just "*some* degree of commonality among the indictable group[.]" *United States v. Blackley*, 986 F. Supp. 616, 619 (D.D.C. 1997) (emphasis added).

Second, a defendant must show that the prosecutorial policy had "a discriminatory purpose," *Armstrong*, 517 U.S. at 465, meaning that the Government prosecuted that defendant "because of" his membership in an identifiable group. *Wayte v. United States*, 470 U.S. 598, 610 5 (1985). Of course, direct evidence of that purpose is rarely available, so courts permit defendants to use statistical disparities and other indirect evidence to show intent. *See United States v. Khanu*, 664 F. Supp. 2d 28, 33 (D.D.C. 2009).

Importantly, because a selective prosecution claim often requires discovery into the Government's files, a defendant must only present "at least a colorable claim" of selective prosecution before any discovery is permitted, *Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982), which is one that presents just "*some* evidence tending to show the existence of the essential elements" of selective prosecution. *Armstrong*, 517 U.S. at 468 (emphasis added).

## ANALYSIS

Mr. Sahady presents "at least a colorable claim" of selective prosecution even with the limited information that is available to him and the public.

### I. MR. SAHADY HAS ESTABLISHED THAT THE PROSECUTORIAL POLICY HAD A DISCRIMINATORY EFFECT

As stated above, the first elements of a selective prosecution claim requires that a defendant establish that the prosecutorial policy had a discriminatory effect, which is done by showing that the Government afforded "different treatment" to persons "similarly situated" to him. Mr. Sahady has made this showing.

Indeed, the large amount of dismissals of the liberal Oregon defendants cited above compared to the nearly nonexistent dismissals of the January 6 defendants itself demonstrates "different treatment" of the similarly situated Oregon defendants. Crucially, the defendants are similarly situated in many ways—and there is certainly "some degree" of commonality—as both groups are charged with trespassing on a federal building, in large groups, in major cities, during political protests just months apart from each other. Of course, one of the other very few ways in which the groups are not similarly situated is that the Oregon rioters who have received "downright rare" positive treatment are liberals—as compared to the conservative January 6 defendants like Mr. Sahady who have been aggressively prosecuted by the government.

7

Importantly, not only is there substantial evidence that the government afforded "different treatment" to persons "similarly situated" to January 6 defendants as a whole, but the three individual Oregon defendants mentioned in Section II(B), *supra*, received vastly different treatment than Mr. Sahady, despite the fact that those defendants were accused of acting violently. Specifically, those individual Oregon defendants were accused of assaulting federal officers while holding weapons, resisting arrest, and carrying with them what can only be characterized as warfare equipment. Further, at least one identified individual even went so far as to punch an officer in the face with a closed fist. Yet these individual liberal defendants, who were accused of physical aggression and violence, suspiciously had their charges completely dismissed by the government. These liberal defendants' outcomes are in stark contrast to Mr. Sahady, a conservative, who is still currently being aggressively charged by the government with 3 charges, when he is merely allegedly to have trespassed while not acting in an orderly fashion.

Based on these comparisons, Mr. Sahady has demonstrated that the government afforded "different treatment" to persons "similarly situated" to him, establishing the first elements of a selective prosecution claim.[8] The only issue remaining is whether Mr. Sahady can demonstrate at this stage that this difference had "a discriminatory purpose." He can.

---

[8] In a separate matter this Court previously held that while there may be evidence of differing treatment, the Oregon defendants are not "similarly situated" because of differences such as the time the riots occurred. *See Judd*, 579 F. Supp. 3d 1 (D.D.C. 2021). However, it must be emphasized that to demonstrate that others were "similarly situated" there only need be "*some* degree of commonality among the indictable group[.]"*Blackley*, 986 F. Supp. at 619 (D.D.C. 1997) (emphasis added). This standard makes logical sense, otherwise a selective prosecution claim could never be successful, as one situation involving a separate defendant will *always* involve some identifiable difference, such as the time of day events occurred.

### II. MR. SAHADY HAS ESTABLISHED THAT THE PROSECUTORIAL POLICY HAD A DISCRIMINATORY PURPOSE

As stated above, to demonstrate that the government has prosecuted Mr. Sahady "because of" his membership in an identifiable group—a conservative political branch—Mr. Sahady is permitted to use statistical disparities and other indirect evidence to show intent because direct evidence is rarely available, especially at this stage of the proceedings.

The statistical disparities and other indirect evidence in this case are overwhelming. Indeed, this Court in another matter has called the treatment the Oregon defendants received as "downright rare and potentially suspicious." *Judd*, 579 F. Supp. 3d at 7. Of course, one of the few, if only, differences between the Oregon defendants—both as a whole and the three specifics cases identified above—is the political affiliation of the defendants. Of course, Mr. Sahady and other January 6 defendants are currently being prosecuted by a Democratic administration which presumably supports the Oregon defendants' political viewpoints. *See* Aruna Viswanatha, Sadie Gurman, *Almost Half of Federal Cases Against Portland Rioters Have Been Dismissed*, WALL STREET JOURNAL (April 15, 2021)[9] (stating that "Federal prosecutors in Portland, Oregon, have moved to dismiss almost half the cases they charged in connection with violence accompanying last year's protests over racial injustice, as authorities grapple with how to tamp down *politically motivated* unrest that has arisen since then") (emphasis added). Unsurprisingly, the government's attitude toward the liberal Oregon rioters changed after Democrat Joe Biden took office. *See* Josh Gerstein, *Leniency for defendants in Portland clashes could affect Capitol riot cases*, POLITICO (April 14, 2021)[10] (stating

---

[9] https://www.wsj.com/articles/almost-half-of-federal-cases-against-portland-rioters-have-been-dismissed-11618501979.
[10] https://www.politico.com/news/2021/04/14/portland-capitol-riot-cases-481346.

9

that "[a]fter President Joe Biden's inauguration, federal prosecutors agreed to probation deals for charges related to last summer's unrest in Oregon.").

Overall, the January 6 defendants and Mr. Sahady have received incredibly harsh prosecution, in contrast to the liberal Oregon defendants who have received shockingly lenient treatment, despite engaging in violent conduct that is not alleged against Mr. Sahady. Of course, the statistical disparities and other indirect evidence demonstrate that these discrepancies exist for one key reason: the political beliefs of the Oregon defendants compared to Mr. Sahady. Consequently, Mr. Sahady has stated a colorable claim for selective prosecution.

## CONCLUSION

Based upon the above, because Mr. Sahady has presented "at least a colorable claim" of selective prosecution, he requests this Court order discovery in which the "Government must assemble from its own files documents which might corroborate or refute [his selective prosecution] claim." *See Armstrong*, 517 U.S. at 468.

Respectfully submitted, the 17th day of March, 2023.

>*/s/ Blake A. Weiner*
>Blake A. Weiner, VA Bar No. 94087
>BLAKE WEINER LAW, PLLC
>1806 Summit Avenue, Suite 300
>Richmond, VA 23230
>Telephone: (804) 482-1465
>Email: bweiner@blakeweinerlaw.com
>*Counsel for Mr. Sahady*