THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MARK SAHADY,

        Defendant.

Case No. 1:21-cr-00134 (CJN)

## MR. SAHADY'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Comes now, Mark Sahady, by and through his undersigned counsel, and moves this Court pursuant to Fed.R.Crim.P. 12(b) and the First Amendment to the United States Constitution to dismiss Count Four of the Second Superseding Information, which charges that he "paraded, demonstrated, and picketed in any United States Capitol Building" in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 65 at 3.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

On February 19, 2021, Mr. Sahady was charged by way of Information with three misdemeanors for his alleged acts on January 6, 2021. ECF No. 9. Specifically, Mr. Sahady was charged with Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18,

---

[1] The Court, via Minute Order on March 27, 2023, originally permitted Mr. Sahady to file this Motion to Dismiss based on Count Four of the Second Superseding Information. *See also* ECF No. 59. However, on April 6, 2023, the day before this Motion was due to the Court, the government filed an Indictment, charging Mr. Sahady with an additional offense. ECF No. 65. The Court, via Minute Order on April 6, 2023, then set a status conference for April 11, 2023, as a result of this new Indictment. Thus, in this Motion Mr. Sahady does not make any argument or move for any relief with respect to this new Indictment, and will reserve argument and motions regarding this new Indictment for the status conference set for April 11, 2023.

1

U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, U.S.C. § 1752(a)(2), and Disorderly Conduct in a Capitol Building, in violation of Title 40, U.S.C. § 5104(e)(2)(D). *Id.*

As has been extensively covered by the media, on January 6, 2021, Mr. Sahady along with other January 6 defendants were protesting the November 2020 presidential election, where Democrat Joe Biden was declared the winner over incumbent Republican Donald Trump. ECF No. 1-1. Many individuals, including Mr. Sahady, are alleged to have entered the United States Capitol building during a protest of the presidential election results. *See id.*

The government alleges that Mr. Sahady was an individual "inside the U.S. Capitol building without authority to be there," and that Mr. Sahady generally was not acting orderly while he was inside the Capitol. ECF No. 1-1 at 2-6.

On March 22, 2022, the government filed a First Superseding Information. ECF No. 37. The First Superseding Information did not amend the code sections, or add Counts, but rather merely amended the language providing a basis of the charges. *Id.* Trial was then set for April 17, 2023. *See* ECF No. 46. The government then re-extended a plea offer, which had an expiration date of February 24, 2023. Mr. Sahady did not accept the plea offer.

On March 22, 2023, less than four weeks before the April 17 trial date, just weeks after the plea offer expired, and after the motion deadlines had passed, the government filed a Second Superseding Information. ECF No. 57. In this Second Superseding Information, the government added an additional Count ("Count Four") against Mr. Sahady: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, U.S.C. § 5104(e)(2)(G). *See* ECF No. 57. This added Count appears to be based on the same conduct and facts that the government has been aware of since the government filed its First Information over two years ago on February 19, 2021.

Mr. Sahady now moves to dismiss Count Four, because 40 U.S.C. § 5104(e)(2)(G) is unconstitutional on its face, and was only added to punish Mr. Sahady for exercising his legally protected right to a trial.

## ARGUMENT

**I.  Count Four Must Be Dismissed Because 40 U.S.C. § 5104(e)(2)(G) Violates the First Amendment**

A criminal defendant may move to dismiss the information against him before trial for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An information may fail to state an offense in two relevant ways: if the charged statutory provision is unconstitutional, *United States v. McHugh*, Crim. A. No. 21-453 (JDB), 2022 WL 296304, at *3 (D.D.C. Feb. 1, 2022), or the if the offense charged does not apply to the defendant's conduct, *United States v. Montgomery*, 578 F. Supp. 3d 54, 58–59 (D.D.C. 2021). 40 U.S.C. § 5104(e)(2)(G) is unconstitutional pursuant to the First Amendment.

The First Amendment provides that "Congress shall make no law ... abridging ... the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. AMEND. I. As a result of this protection, criminal laws "that make unlawful a substantial amount of constitutionally protected conduct may be held *facially* invalid even if they also have legitimate application." *City of Houston v. Hill*, 482 U.S. 451, 459 (1987) (emphasis added).

Mr. Sahady now moves to dismiss Count Four in the Second Superseding Information, which charges that he "paraded, demonstrated, and picketed in any United States Capitol Building" in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 57 at 3. Count Four must be dismissed because it

is unconstitutional on its face.[2] The statute is unconstitutional on its face for two reasons. First, it is overbroad. Second, it is vague.

Importantly, "[t]he objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 432–33 (1963).

### A.  § 5104(e)(2)(G) Is Overbroad

40 U.S.C. § 5104(e)(2)(G) states that "[a]n individual or group of individuals may not willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings." The statute is overbroad, and therefore should be dismissed.

By virtue of the First Amendment, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)). In conducting this overbreadth analysis, the first step "is to construe the challenged statute." *United States v. Williams*, 553 U.S. 285, 293 (2008). The next step is to ask whether the statute, properly construed, "criminalizes a substantial amount of protected expressive activity." *Id.* at 297; *United States v. Montgomery*, No. CR 21-46 (RDM), 2021 WL 6134591, at *23 (D.D.C. Dec. 28, 2021).

---

[2]  Mr. Sahady does not waive any "as-applied" arguments to the statute, but does not raise them here because those arguments are premature at this stage. *See United States v. Andries*, No. 21-93 (RC), 2022 U.S. Dist. LEXIS 44794, at *8 (D.D.C. Mar. 14, 2022) (To the extent [the defendant] raises an as-applied vagueness challenge, the Court holds that the claim is premature because its resolution would depend on facts not included in the Superseding Indictment.").

The plain language of 40 U.S.C. § 5104(e)(2)(G) is shockingly broad, criminalizing an incredible amount of protected First Amendment activity. The legislative history and past enforcement policy is instructive.

### i.     Legislative History

Section 5104(e)(2)(G) does not limit itself to *disruptive* speech, protests, gatherings, or even audible expressions of ideas. The history of the law demonstrates that the unconstitutionally broad nature of the statute was considered a major issue decades ago. During a statutory revision in 1967, Representative O'Neal stated: "I am a little bit disturbed about the language . . . wherein the proposed legislation, if adopted, would make it a violation to parade, demonstrate, or picket within any of the Capitol buildings."[3] Representative Bingham also expressed concerns about overbreadth, stating that he was "deeply concerned about the broad scope, vague language, and possible interference with first amendment rights of the bill[.]" Congressional Record at 29394.

### ii.    Past Enforcement Policy

The past enforcement policy of the statute also demonstrates the overbreadth and unconstitutionality of the law. This is a crucial factor to examine in determining a first amendment challenge based on overbreadth. *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("In evaluating respondent's facial challenge, we must consider the [enforcers] authoritative constructions of the ordinance, including its own implementation and interpretation of it."). One U.S. Capitol Police regulation interpreting a previous version of Section 5104(e)(2)(G) was held unconstitutional in a case where an individual was prohibited from praying in silence—under imminent threat of arrest—in the Capitol building. *See Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp.

---

[3] Congressional Record-House (October 19, 1967) at 29389, available at https://www.govinfo.gov/content/pkg/GPO-CRECB-1967-pt22/pdf/GPO-CRECB-1967-pt22-2-1.pdf (last accessed April 2, 2023) (hereinafter "Congressional Record").

2d 50, 53 (D.D.C. 2000). The U.S. Capitol Police regulation, naturally reading the statute, logically concluded that demonstration activity under the statute included "expressive conduct that convey[s] a message supporting or opposing a point of view or has the … propensity to attract a crowd of onlookers, but does not include merely wearing Tee shirts, buttons or other similar articles of apparel that convey a message." *Id.* (quoting Traffic Regulations for the Capitol Grounds § 158).

This regulation, which logically interprets the plain language of the statue, was held unconstitutional. The court reasoned that the regulation was too broad as it invited "the Capitol Police to restrict behavior that is in no way disruptive." *Bynum*, 93 F. Supp. 2d at 57. Of course, the court focused on the regulation rather than the statute itself, operating under the premise that the statute was limited to disruptive conduct. *Id.* at 57–58. However, the statute is in every way as broad as the regulation: prohibiting anyone from "demonstrate[ing]" in any of the Capitol Buildings, regardless of how disruptive the conduct. *See* 40 U.S.C. § 5104(e)(2)(G).

For these reasons, it is clear that Section 5104(e)(2)(G) as currently written is unconstitutionally overbroad, as it "criminalizes a substantial amount of protected expressive activity" such as expressing any ideas, regardless of whether it actually disrupts or even has the propensity to disrupt. *United States v. Williams*, 553 U.S. 285, 293 (2008). To hold otherwise, and conclude that the statute is not overbroad, would result in a holding that "a group of congressional staffers or members of the general public who stood [inside] the Capitol arguing about the latest campaign finance bill, health care initiative, or welfare reform would presumably be risking [arrest.]" *Lederman v. United States*, 89 F. Supp. 2d 29, 41 (D.D.C. 2000).

### B.  § 5104(e)(2)(G) Is Vague

40 U.S.C. § 5104(e)(2)(G) is not just overbroad, but also unconstitutionally vague, and should also be dismissed for this reason alone. The vagueness doctrine "requires that a penal statute define

the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357–58, (1983). "Where a statute's literal scope, unaided by a narrowing [] interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974). Consequently, a challenge based on a statute's vagueness can be brought even where a specific defendant may have been on notice that his particular conduct fell within the bounds of the statute. *See Thornhill v. State of Alabama*, 310 U.S. 88, 97–98 (1940).

40 U.S.C. § 5104(e)(2)(G) is unconstitutionally vague because, based on the statute's language (1) ordinary people cannot understand what conduct is prohibited, and (2) it encourages arbitrary and discriminatory enforcement.

Based on the plain reading of the statute, an ordinary person would be logical to conclude that even just wearing a shirt with an American flag located anywhere on the shirt would meet the definition of "demonstrate" such that they would be the subject of arrest. *See* Merriam-Webster Dictionary (defining "demonstration" as, among other things, "an outward expression or display."). Of course, this vagueness would more than encourage arbitrary and discriminatory enforcement, but almost by necessity require it. For example, of course it would be hard to imagine a circumstance where a U.S. Capitol Police Officer would arrest an individual from wearing clothing that says "God Bless America." However, it is much less difficult to imagine a U.S. Capitol Police Officer receiving complaints, and subsequently removing or arresting an individual in the U.S. Capitol for wearing clothing that says "Allah Protect Iran." This inconsistent application invited by the vague language is precisely the issue at hand, and why the statute is unconstitutional. *See Lederman v. United States*, 89 F. Supp. 2d 29, 42 (D.D.C. 2000) ("[t]he danger, of course, is that such a broadly-worded ban . .

7

. would be selectively employed to silence those who expressed unpopular ideas regardless of whether the speaker created an obstruction or some other disturbance.").

Indeed, member of Congress have agreed that this vagueness is unconstitutional. *See* 1967 U.S.C.C.A.N. 1747 (Representative Jerome Waldie stating that "I suggested that the qualifying phrase used in a portion of the misdemeanor section of the act, 'with intent to disrupt the orderly conduct of official business' should have been applied to all conduct sought to be controlled. The committee did not approve of this limitation. Without such a limitation, in my view, not only does the act become of questionable constitutionality, but it becomes an instrument capable of ensnaring innocent and well-meaning visitors within its provisions." This skepticism of the law was supported by the D.C. Circuit. *See Smith v. D.C.*, 387 F.2d 233, 237 (D.C. Cir. 1967) ("in view of the confusion apparent in the enforcement of these and related statutes, we commend to executive and legislative authorities a review of this entire area of the law."). Thus, it is apparent that Section 5104(e)(2)(G) is unconstitutionally vague on its face.

## II.     Count Four Must Be Dismissed Because of Vindictive Prosecution

Regardless of whether the statute is unconstitutional, Count Four must still be dismissed because of the doctrine of vindictive prosecution.

"There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise." *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S. Ct. 663, 669 (1978). As a result of these limits, a defendant can assert a claim of prosecutorial vindictiveness. If a court finds vindictive prosecution, the charges may be dismissed. *See United States v. Meyer*, 810 F.2d 1242, (D.C. Cir. 1987) (D.C. Circuit affirmed the dismissal of charges on vindictive prosecution grounds).

"[T]he doctrine [of prosecutorial vindictiveness] precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution." *United States v. Safavian*, 649 F.3d 688, 692, 396 U.S. App. D.C. 307 (D.C. Cir. 2011) (per curiam) (citations omitted). If the governments adds "a count to the information solely because the [defendant has] exercised their right to trial" that "course of action [can] constitute[] vindictive prosecution." *Meyer*, 810 F.2d at 1244.

"A defendant may prove prosecutorial vindictiveness by submitting … evidence sufficient to establish a realistic likelihood of vindictiveness, thereby raising a presumption the Government must rebut with objective evidence justifying its action." *Id.* "If the Government can produce objective evidence that its motive in prosecuting the defendant was not vindictive, then the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred." *Id.* The court's "concerns over alleged vindictiveness do not relate to whether a prosecutor has acted maliciously or in bad faith, but whether a prosecutor's actions are designed to punish a defendant for asserting her legal rights." *United States v. Gary*, 291 F.3d 30, 35 (D.C. Cir. 2002).

When the government returns a superseding indictment after a plea offer has been rejected, to demonstrate "a realistic likelihood of vindictiveness" such that the burden shifts to the government, a defendant must show "something more" than the "the run-of-the-mill pretrial situation." *See United States v. Michel*, No. 19-148-1 (CKK), 2022 U.S. Dist. LEXIS 165191, at *24 (D.D.C. Sep. 13, 2022), quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987). That "something more" exists in this case. *See Michel*, 2022 U.S. Dist. LEXIS 165191, at *23 ("Defendant's argument that the Government vindictively returned the operative Superseding Indictment merits further discussion.").

9

In this case, there is sufficient evidence to establish a realistic likelihood that the United States' action to file a second superseding information was designed to punish Mr. Sahady for rejecting a plea offer and proceeding to trial. Specifically, Mr. Sahady's case is based on the events of January 6, 2021—events that happened over two years ago. The government has not represented that its decision to add Count Four is based on new evidence. To the contrary, the decision appears to be based on the same evidence that has been known to the government for over a year, if not more. Indeed, the government presumably has known for years that Mr. Sahady may be charged with 40 U.S.C. § 5104(e)(2)(G) based on the allegations against him, as many January 6 defendants similar to Mr. Sahady have faced the same exact four charges. *See*, e.g., *United States v. Ballenger*, No. 21-719 (JEB), 2022 U.S. Dist. LEXIS 194555, at *2 (D.D.C. Oct. 26, 2022) ("Defendants are charged via Information with four counts: i) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); ii) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); iii) Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and iv) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G)."). This fact is crucial, as the defendant bears the initial burden to demonstrate presumptive vindictiveness pretrial because, "[i]n the pre-trial context, the prosecutor's assessment of the proper extent of prosecution may not have crystallized[.]" *United States v. Allgood*, 610 F. Supp. 3d 239, 248-49 (D.D.C. 2022). Clearly, that lack of crystallization could not have existed here, where the government has prosecuted dozens of, if not more, cases based on the same allegations against Mr. Sahady. "Thus, the suspicion must grow that the prosecutor increased the charges not because of any further factual investigation or legal analysis, but because the defendant[] chose to exercise [his] constitutional right to trial." *Meyer*, 810 F.2d at 1247.

Importantly, just like the government in *Meyer*, the government in this case has "motivation to act vindictively," as, given the large number of defendants facing these misdemeanor charges stemming for January 6, "[t]he government ha[s] a strong incentive to try to keep clear of this courtroom morass: it wished to avoid the annoyance and expense of prosecuting these minor cases at a potentially drawn-out trial." *Meyer*, 810 F.2d at 1247. Further, just as in *Meyer*, when Mr. Sahady "chose to go to trial" he faced more charges than he would have if he did not. *United States v. Meyer*, 258 U.S. App. D.C. 263, 810 F.2d 1242, 1246 (1987).

Thus, the objective facts and circumstances in Mr. Sahady's case demonstrate that the government has known for years that, based on the allegations against Mr. Sahady, it could charge Mr. Sahady with violating 40 U.S.C. § 5104(e)(2)(G). However, the government made the decision to charge Mr. Sahady with Count Four: (1) just weeks after Mr. Sahady's plea offer expired, (2) just weeks before trial, (3) in a case where it possessed the information needed to add Count Four long before it chose to do so; (4) where the government "ha[s] a strong incentive to try to keep clear of this courtroom morass"; and (5) after Mr. Sahady filed, among other motions, a motion to compel discovery for selective prosecution. *See* ECF Nos. 55–56. These facts are in stark contrast to the Supreme Court's decision in *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) where it found no vindictive prosecution because "the only evidence [the defendant was] able to marshal in support of his allegation of vindictiveness [was] that the additional charge was brought at a point in time after his exercise of a protected legal right." *Id.* at 382 n.15.

Based on these facts, there is sufficient evidence that the United States' "actions are designed to punish [Mr. Sahady] for asserting his legal rights." Consequently, Mr. Sahady moves to dismiss Count Four of the Second Superseding Information.

## CONCLUSION

For the reasons explained above, Mr. Sahady requests that this Court dismiss Count Four of the Second Superseding Information, which charges that he "paraded, demonstrated, and picketed in any United States Capitol Building" in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 57 at 3.

Respectfully submitted, the 7th day of April, 2023.

*/s/ Blake A. Weiner*
Blake A. Weiner, VA Bar No. 94087
BLAKE WEINER LAW, PLLC
1806 Summit Avenue, Suite 300
Richmond, VA 23230
Telephone: (804) 482-1465
Email: bweiner@blakeweinerlaw.com
*Counsel for Mr. Sahady*