<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF COLUMBIA</u>

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-134 |
| | ) | |
| SAHADY | ) | |
| | ) | |

<u>DEFENDANT'S OMNIBUS MOTION</u>

Defendant Mark Sahady ("Defendant" or "Sahady"), through counsel, hereby files this motion (the "Omnibus Motion") to supplement the arguments made by his predecessor counsel in support of his motions to dismiss Count IV or the Government's Second Superseding Information, to dismiss Counts I and V of the Government's Third Superseding Indictment, and to Compel Discovery in Support of his Selective Prosecution Claim. The Omnibus Motion does not revisit the Government's Unopposed Motion for a Protective Order, Dkt. 34, which is therefore ripe for decision without further briefing.

PRELIMINARY STATEMENT

On August 11, 2023, Defendant's predecessor counsel, Blake Weiner, moved to withdraw as counsel for Sahady. Dkt. 78. Sahady's current counsel, Eden P. Quainton and Jonathan S. Gross, of Quainton Law, PLLC, entered appearances on behalf of Defendant on August 22, 2023. Dkt. 82, Dkt. 83. While Sahady's current counsel are appreciative of the work of Defendant's former counsel, they are filing this motion to provide additional emphasis and analysis necessary to assist the Court in evaluating complex issues on which, in certain cases, there is no clear Appellate or Supreme Court guidance. The central issue on which further analysis is necessary relates to the Government's indictment of Sahady under 18 U.S.C. § 1512(c)(2), which will be the focus of the

1

Omnibus Motion and the first issue addressed below. In summary, Count I of the Third Superseding Indictment[1] is unconstitutionally vague and must be dismissed. This vagueness stems from the indictment's failure to provide a statement of facts and circumstances that adequately apprises Sahady of the charges against him and his allegedly "corrupt" conduct.

## I.   MOTION TO DISMISS 18 U.S.C. 1512(c)(2), COUNT ONE OF THE "THIRD" SUPERSEDING INDICTMENT

In the separate case of *United States v. Fischer*, 21-cr-0231, Judge Carl Nichols dismissed Count III of the Government's superseding indictment brought against defendant Joseph W. Fischer ("Fischer") on the grounds that 18 U.S.C. 1512(c)(2), punishing a defendant who "corruptly" "obstructs, influences, or impedes any official proceeding, or attempts to do so" had to be read as a "catchall" for conduct of the type identified in  1512(c)(1), which applies to a defendant who "corruptly" "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." *United States v. Fischer*, Dkt. 64 at 7. Because "nothing in Count Three (or the Superseding Indictment generally) allege[d], let alone implied], that Fischer took some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress's certification of the electoral vote," Judge Nichols granted Fischer's Motion to Dismiss. Dkt. 64 at 8.

On April 7, 2023, the Court of Appeals for the District Court of the District of Columbia reversed Judge Nichols' decision, rejecting the statutory interpretation that 18 U.S.C. § 1512(c)(2) was limited by 18 U.S.C. § 1512(c)(1), and holding that the "natural" meaning of 18 U.S.C. §

---

[1] The Government's terminology is confusing and incorrect. The "Third" Superseding "Indictment" is in fact the "First" indictment of any kind filed against Defendant as the prior two charging documents were "Informations" and did not include the 18 U.S.C. § 1512(c)(2) felony charge.

1512(c)(2) was to act as a general catchall for *all forms* of conduct that corruptly obstructed or interfered with an official proceeding. *United States v. Fischer*, 64 F.4th 329, 336 (D.C. Cir. 2023). The Court left for another day the precise contours of the meaning of the adverb "corruptly" in the statute, holding only that the statute was satisfied by allegations of "assaultive" obstruction, such as those charged against Fischer. *Id.* at 340. While the dissent followed Judge Nichols' analysis of the statute and would have dismissed the indictment under 18 U.S.C. § 1512(c)(2), the two concurring majority opinions, while taking different views of the meaning of the word "corruptly," agreed that, as applied to the allegations against Fischer, the indictment under 18 U.S.C. § 1512(c)(2) was not constitutionally infirm.

In the present case, the indictment of Sahady under 18 U.S.C. § 1512(c) must be dismissed for two separate, independent reasons. First, the Sahady indictment itself, on its face, is void for vagueness. Second, the facts alleged by the Government do not satisfy any proper reading of the term "corruptly." These points are addressed below.

**A.  Count I of the "Third" Superseding Indictment of Sahady is Void for Vagueness**.

The Constitutional infirmity of the Government's indictment of Sahady can first be seen by comparing the operative language of the indictments of Fischer and Sahady. Count III of the Government's original indictment of Fischer under 18 U.S.C. §. 1512(c)(2) read as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Joseph W. Fischer, attempted, and did, corruptly obstruct, influence and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority ***and committing an act of civil disorder and engaging in disorderly and disruptive conduct*** (emphasis added).

*See U.S. v. Fischer*, Dkt.15.

The Government then superseded this count of the indictment, as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Joseph W. Fischer attempted, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically Congress certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18

*U.S. v. Fischer*, Dkt. 52.

While the superseding indictment is obviously vague, Fischer was at least on notice that he had "corruptly" engaged in "civil disorder" and "disorderly and disruptive conduct" while "remaining in the United States Capitol." The Fischer Statement of Facts provided significant detail fleshing out the disorderly and disruptive actions at issue, providing instances of the "assaultive" conduct underscored by the Court of Appeals. *U.S. v. Fischer*, Dkt. 1 at 3, 7 (Fischer allegedly "started charging towards a line of police officers while appearing to shout 'Hold the Line' and 'Motherfuckers'" and having "a physical encounter with at least one police officer," then engaging in a "scuffle" with law enforcement officers that left one officer on the ground).

In contrast, the Government's "Third" Superseding Indictment for Sahady proceeded directly to the vague language cited above.

> On or about January 6, 2021, within the District of Columbia and elsewhere, Mark Sahady attempted, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically Congress certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18

U.S. v. Sahady, Dkt, 65.

Nothing in the indictment mentioned "civil disorder" or "disorderly or disruptive conduct" or *any* specific conduct in which Sahady was alleged to have engaged "corruptly". The sudden appearance of a corruptly influencing charge with no factual details provided Sahady with no notice whatsoever of the specific conduct with which he was being charged, and nothing in the

4

Statement of Facts filed with the original Complaint against Sahady provided any support for a felony obstruction charge.

The Statement of Facts alleged only that Sahady:

- was glad to be in DC on November 16, 2020;
- wanted to plan a rally to "oppose" Biden and "send a message" against tyranny;
- posted it was "important that millions of Americans show up in DC on January 6 to support the legitimate President, Donald Trump, and show Democrats what they will be facing if they continue to try and steal the Presidency."
- stated he had "7 buses coming" for the rally;
- stated that SHFA [Super Happy Fun America] would get "wild" in D.C. on January 6;
- posted on January 4 ""January 6 – Washington, DC – It begins."
- took pictures of himself inside the Capitol with "person Number 1," later identified as Susan Ianuzzi, who plead guilty to certain misdemeanor charges; and
- traveled to D.C. with "person Number 1."

Other than the act of being physically present inside the Capitol, all the other facts alleged constitute plainly protected activity under the First Amendment and cannot possibly support a felony or any other criminal charge. The Government never amended the Statement of Facts or made any other factual allegations that could have put Sahady on notice of allegedly felonious conduct. For this reason, Count I of the "Third" Superseding Indictment is void for vagueness and must be dismissed. As this Court has clearly stated:

The Constitution requires that in all criminal prosecutions an accused shall be informed of the nature and cause of the accusation against him . . . Not only is it a basic rule that [c]riminal statutes must have an ascertainable standard of guilt or they fall for vagueness, but it is equally well established that *an indictment must charge an offense with such reasonable certainty that the accused can make his defense*. The cases on the point are myriad, as reference to any authority quickly reveals.

*United States v. Lattimore*, 215 F.2d 847, 849 (D.C. Cir. 1954) (emphasis added) (internal citations omitted); *see also O'Connor v. United States*, 240 F.2d 404, 405 (D.C. Cir. 1956) (indictment void

where "accused was unable, and therefore could not be required, to defend against so vague a charge").

In *O'Connor*, the Court set aside a conviction on the grounds that an indictment for failing to answer a question as to whether the accused was a "member of a Communist conspiracy" was so vague as to violate both the Sixth Amendment and Rule 7(c) of the Federal Rules of Civil Procedure. *O'Connor*, 240 F.2d 404. In *Lattimore*, the Court held that an indictment that charged an individual with perjury as to whether he was a "sympathizer" of the Communist party was void for vagueness. *Lattimore*, 215 F.2d 855. Here, an indictment that simply repeats the language of 18 U.S.C. 1512(c)(2) without any indication of specific conduct that could possibly come within the statute does not provide a defendant with notice of the charges against him and the ability to prepare a defense.

The Government appears to believe that evidence discovered after the filing of the initial Statement of Facts, but never incorporated into a superseding information or indictment or any formal charging document, can breathe specificity into an otherwise vague indictment. The Government's case appears to rest on text messages with an individual disclosed to the Government years after the original complaint, that were never incorporated into either the Second Superseding Information or the "Third" Superseding Information, and only make their appearance in the Government's Omnibus Opposition to Defendant's Motion to Dismiss:

> After they left the Capitol Building, Sahady texted an acquaintance, "I finally left. We were tear gassed and backed the police down. They were afraid. We walked all over the building" and "I was one of the ones in front. Wonder if there will be legal consequences. They tear gassed us. People grabbed the cannisters and sprayed them back. Sue [Ianni] and I grabbed a shield and buttons [batons] from police and pulled people out who they were trying to arrest. We were all walking around but were confused" and "when they blocked the doors some people took sledgehammer to windows."

Omnibus Mot. in Opp. to Def.'s Mot.'s to Dismiss at 4.

The text messages on which the Government relies are inadmissible because of fatal problems with their chain of custody, which Sahady will show in a subsequent evidentiary motion, if necessary. But for Constitutional purposes, the Government cannot cherry-pick evidence never disclosed in a charging document and insert these *into a brief* as a means of saving an otherwise fatally vague indictment. The Government cites no case for such an expansive, almost Soviet theory, because there is none. And the Government cannot simply regurgitate the elements of the statute without some indication of the specific conduct with which Defendant is charged, no matter how many wrongly decided decisions the Government may try to adduce in opposition. As the Supreme Court has unambiguously stated:

> Undoubtedly the language of the statute may be used in the general description of an offence, ***but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged***.

*Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (emphasis added).

Countless courts have resoundingly affirmed this core Constitutional principle. *Russell v. United States*, 369 U.S. 749, 765 (1962) (collecting cases); *United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017) ("indictment must contain every element of the offense charged *and* must fairly apprise the accused *of the conduct allegedly constituting the offense* . . . the language of the statute may be used . . . but it *must* be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e, coming under the general description, with which he is charged") (emphasis in original); *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979) (finding "that the indictment fail[ed] to allege sufficient facts to facilitate the proper preparation of a defense and to ensure that the defendants were prosecuted on facts presented to the Grand Jury); *U.S. v. Garcia-Geronim*o, 663 F.2d 738 (7th Cir. 1981) (holding

that an indictment that fails to apprise the defendant with reasonable certainty of the nature of the

accusation is defective although it may follow the language of the statute); *United States v.*

*Schmitz*, 634 F.3d 1247, 1261-64 (11th Cir.2011) (finding count of indictment invalid where it was

not accompanied by sufficient statement of facts); *United States v. Bobo*, 344 F.3d 1076, 1083–84

(11th Cir. 2003) (same);  *United States v. Cloutier*, No. CRIM. A. 90-10040-MA, 1990 WL

150060, at *6 (D. Mass. Aug. 24, 1990) (indictment clearly lacked a statement of the facts and

circumstances that would inform the accused of the specific offenses with which they were

charged); *U.S. Buddenberg*, No. CR-09-00263 RMW, 2010 WL 2735547, at *4 (N.D. Cal. July

12, 2010) (finding indictment lacked necessary specificity).

While Defendant reserves the right to move for a Bill of Particulars, it is axiomatic that a

Bill of Particulars cannot save an invalid indictment. *See Russell*, 369 U.S. 749 (1962); *United*

*States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976); *United States v. Cecil*, 608 F.2d at 1296.

Because the "Third" Superseding Indictment lacks any statement of facts and circumstances that

could support its felony charge, it must be dismissed.

**B. Count I of the "Third" Superseding Indictment Leaves Sahady Guessing as to the Meaning of Word "Corruptly."**

While the "Third" Superseding Indictment is fatally flawed generally, as discussed above,

it also suffers more particularly from its failure to provide any facts of circumstances that would

illuminate what is meant by the word "corruptly." In *Fischer*, the Court of Appeals expressly

declined to adopt any particular definition of "corruptly," leaving "the exact contours of 'corrupt'

intent for another day, *Fischer*, 64 F.4th at 340, and stating "it is more prudent to delay addressing

the meaning of corrupt intent until that issue is properly presented to the court." *Id.* at 341 (D.C.

Cir. 2023). That issue is now squarely before this Court. As discussed, the Government has

provided nothing in its Statement of Facts or in the language of the "Third" Superseding Indictment

that would specify what is meant by "corruptly" in the charge against Sahady. The Court of Appeals general statement that "'corrupt' intent exists at least when an obstructive action is independently unlawful," *id*. at 340, does not help because the Government has not specified which act, if any, is "independently unlawful." The only potentially unlawful act specified anywhere in the Statement of Facts is Sahady's presence inside the Capitol. *See supra* at 5. But the Government has never argued, and no convictions have ever been sustained under 18 U.S.C. § 1512(c)(2), that the mere presence of an individual inside the Capitol on January 6 constituted a felony warranting 20 years' incarceration. If the Government's theory is that the "corrupt" intent can be found in any of Sahady's posts cited in the Statement of Facts, this amounts to the criminalization of thought, for all of Sahady's statements fall squarely within the core of the First Amendment. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995); *Mills v. State of Ala.*, 384 U.S. 214, 218 (1966) ("practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs"); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191, 134 S. Ct. 1434, 1441, 188 L. Ed. 2d 468 (2014) (First Amendment protects flag burning, funeral protests, and Nazi parades—despite the profound offense such spectacles cause).

Even if, as noted *supra* at 8, the Court of Appeals has given "corruptly" some determinate content at a high level of generality by referring to conduct that is "independently unlawful," this does not help in a particular case in determining whether an indictment meets the requirements of the Sixth Amendment. Without more, this definition would make every "independently unlawful" act "corrupt," leading to a "breathtaking" scope of punishment for illegal acts carried out to influence an official proceeding: think, say, of illegal protests of the Kavanaugh hearings, or illegal climate action "die ins" intended to influence official debate on environmental legislation. Even the approach of the concurrence in *Fischer*, which would require a defendant to act "with an intent

to procure an unlawful benefit either for himself or for some other person," *U.S. v. Fischer,* 64 F.4[th] at 352, does not resolve the issue presented here, namely, how a defendant is to understand the charge of "corruptly" "influencing" or "obstructing" an official proceeding, without a statement of facts that would apprise him of the specific conduct with which he is charged. For example, even adopting the concurrence's definition, an individual who stole a copy of a legal memorandum arguing that the Vice President has the authority to delay certification of election results and emailed the memorandum to a Senator who also believed the certification could be delayed, would be subject to a 20-year prison term, a result that appears grossly disproportionate to the conduct at issue. But at the level of the sufficiency of the indictment, the fundamental problem remains the one discussed above: without a statement of facts that provides a minimum degree of specificity with respect to the acts deemed to constitute the "corrupt" "interference" with an official proceeding, the criminal defendant is left to guess at the nature of his alleged offense, depriving him of his Constitutional rights to fair notice and a genuine opportunity to prepare his defense.[2]

Ultimately, it may well be that the Constitutional and statutory problems stemming from the Government's failure to provide notice of the specific conduct being charged will prove the judiciousness of the interpretive approach adopted by Judge Nichols and Judge Katsas writing in dissent in *Fischer*. If Section 1512(c)(2) were cabined to acts "of the same type" as those listed in Section 1512(c)(1), a bare-bones Statement of Fact could, conceivably, pass constitutional muster, since witness tampering, document destruction and the like are intrinsically more specific than the generic charge of "influencing" an "official proceeding." As another District Court judge found in

---

[2] Nor can the Government dump a body of evidence on the Defendant and say, "look in there, you'll find something" or cherry-pick evidence in its briefing: what matters is the indictment and the accompanying Statement of Facts, otherwise the rules of criminal procedure and the Sixth Amendment would become dead letters.

a similar context: where a statute lists specific conduct, such as "making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information," defendants would be "hard-pressed to argue that they were not on notice that the term 'corruptly' . . . extended to the conduct alleged in the Superseding Indictment." *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999). But in the context of the "breathtaking" scope of the Fischer court's maximalist interpretation of Section 1512(c)(2), *Fischer*, 64 F.4th at 351 (Walker J., concurring), a proper balancing of the rights of the defense with the Government's interests requires special vigilance at the indictment stage, lest the Government combine extreme vagueness with breathtaking scope, thus criminalizing conduct without the necessary Constitutional protections. Count I of the "Third" Superseding Indictment must be dismissed.

## II. Sahady's Speedy Trial Rights Were Violated by the Belated Filing of the "Third" Superseding Indictment.

The Government's mislabeling of its First Superseding Indictment as a "Third" Superseding Indictment appears designed to hide the ball. The Government appears to be hoping that by branding its first indictment as its "third" superseding indictment, it will mask the unprecedented nature of its approach in this case. After proceeding solely on the basis of misdemeanor charges against Sahady for over two years, and after resolving the case against Sahady's co-defendant, Sue Ianuzzi, solely on the basis of misdemeanor charges, the Government suddenly, on the basis of "new" evidence never identified in a charging document, added a felony charge under 18 U.S.C. § 1512(c)(2). While scrupulously avoiding acknowledging that this felony charge represents the first (and only) indictment of Sahady in this two-year case – repeatedly using the circumlocution, "Second Information and Indictment" in its Omnibus Opposition to the Defendant's Motion to Dismiss, Dkt. 73 (the "Opp.") – the Government presents its last-minute, eve-of-trial indictment as perfectly normal. Opp. at 5.

The Government cites a string of cases on page 5 of its Opp. in which an indictment was superseded on the eve of trial, hoping to convince the Court that its approach is a standard one the Government has followed "in many cases in a similar posture." *Id.* Yet a review of the cases cited by the Government reveals that not a single one supports the extraordinary supersession of an information by an indictment more than two years after the information was first filed. In *United States v. Speed*, 22-cr-244, an Information was filed against Speed on July 18, 2022. Dkt. 20. On January 11, 2023, less than six months later, the Government filed a Superseding Indictment. Dkt. 38. This could not be further removed from the two-year delay in Sahady's case. In *United States v. Barnett*, 21-cr-38, Barnett was originally indicted on a series of felony charges, including 18 U.S.C. § 1512(c)(2). These felony charges were then superseded with an additional felony charge under 18 U.S.C. § 231(a)(3). *Barnett*, Dkt. 96. *Barnett* says nothing about the timing issues in superseding an information with an indictment more than two years after the filing of the information. Similarly, in *United States v. Miller*, 21-cr-119, the defendant was originally indicted on a series of felony charges that were then superseded with additional felony charges. *See Miller*, Dkt. 30 (superseding indictment modifying language of 18 U.S.C. § 1512(c)(2); Dkt. 111 (third superseding indictment adding additional count under 18 U.S.C. § 231(a)(3)). Not only did *Miller* involve modifications to original felony charges, but all three superseding indictments were filed less than a year after the original indictment. Finally, the Government cites *United States v. Irwin*, 21-cr-589, in which an information was superseded by an indictment after eight months. *Compare*, *Irwin* Dkt. 9 *with Irwin* Dkt. 26. Again, this case provides no authority for the Government to wait over two years before indicting Sahady.

As Sahady's former counsel appropriately stressed, "generally, a delay of one year is presumptively prejudicial." *United States v. Bikundi*, 926 F.3d 761, 779 (D.C. Cir. 2019). *See* Mr.

Sahady Motion to Dismiss and Memorandum of Law, Dkt. 72 (the "Mot. to Dismiss"), at 10. While *Bikundi* found the presumption could be overcome on a proper showing, that case represented a felony-to-felony superseding indictment, not the information-to-indictment at issue here, a change that obviously heightens the prejudice to the defendant. The belated addition of a felony charge also strongly suggests an improper motive in the Government's actions and Sahady reiterates his previous counsel's arguments that this change constitutes vindictive prosecution. Mot. to Dismiss. at 13.

At bottom, the issue here is whether the Government's claimed reliance on "new evidence" outweighs the unprecedented delay and heightened prejudice facing Sahady. For the "new evidence" consideration to weigh in the Government's favor, this evidence would need to be clear and unambiguous. Yet nothing could be further from the truth, as discussed above in Sahady's discussion of the unconstitutional vagueness of Count I of the "Third" Superseding Indictment. Allegedly, the Government explained the nature of its new evidence to the Court during a hearing. Opp. at 20. But in a masterpiece of obfuscation, the Government immediately qualifies the nature of its disclosure, making it virtually impossible to understand what exactly prompted the belated felony charge: "Additionally, as the government previously indicated to the Court, the Indictment was partially filed in response to new evidence and that new evidence's effect on the government's view of pre- existing evidence." Opp. at 20. What this means is anyone's guess. The "partial" basis for the charge is never clearly explained and the idea that this "partial" evidence could somehow retrospectively transform misdemeanor behavior into felonious conduct is unpersuasive at best, and downright dangerous at worst. As discussed above, the initial facts alleged against Sahady amounted to a litany of charges against political speech and evidence of Sahady's presence inside the Capitol. Subsequent statements cannot criminalize prior speech without upending the fabric of

the First Amendment. Nor can any such statements provide a basis for transforming misdemeanor presence inside the Capitol to a 20-year felony without forcing thought and speech crimes into the Government's already stretched view of 18 U.S.C. § 1512(c)(2). *See supra*.

The Government's "new" evidentiary basis for its felony charge – admitted to be only "partially" new and in some undescribed manner resulting in a re-conception of prior facts – left the defense utterly confused, as the Government acknowledges with a further muddying of the water and a garbled citation to the Mot. to Dismiss, quoting Sahady as saying the Government's felony charge "appears to be based on the same evidence[,] ECF No. 72 at 10, reveals a cursory or incomplete understanding of the facts that support Count One, rather than some other deficiency." Opp. at 20 and Note 5. It appears that the Government has misplaced its quotation marks, which should follow the word "evidence" rather than the word "deficiency" at the end of the sentence. But if the best that the Government can do is to suggest that its "new evidence" is so probative that the defense was unable to understand it, the most straightforward conclusion is that the Government failed to make clear, with any degree of precision, exactly what it was charging and how any evidence supported its new theory. Thus, of the four factors to be considered under *Barker v. Wingo*, 407 U.S. 514, 515 (1972) in assessing Constitutional speedy trial issues, the only one that could even conceivably help the Government – the reason for its belated indictment – is so murky and ill-defined that it cuts against the untimely imposition of felony liability. For this further Constitutional reason, Count I of the "Third" Superseding Indictment must be dismissed.[3]

### III.     Motion to Comple Discovery for Selective Prosecution

Sahady moves to compel discovery regarding his claim of selective prosecution.

---

[3] Sahady adopts his prior counsel's arguments relating to the Speedy Trial Act and Fed. R. Crim. P. 48(b), and stresses that the unprecedented length of the delay in the Government's decision to bring a felony charge, the clear prejudice to defendant, and the absence of a compelling reason for the delay, all underscore the violation of Sahady's statutory, as well as his Constitutional, rights.

The Supreme Court set forth the standard for a selective prosecution defense in *United States v. Armstrong*, 517 U.S. 456 (1996). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.* at 463-64. Admittedly, the standard is a "demanding one," as the Government is afforded a "background presumption" that the Government did not violate the Constitution so long as the prosecutor "has probable cause to believe that the accused committed an offense defined by the statute. *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). To rebut the presumption, a criminal defendant must present "clear evidence" that the prosecutor's discretion went beyond the many constraints imposed upon the Government by the Constitution. *United States v. Chemical Foundation*, Inc., 272 U.S. 1, 14 (1926).

One of the constitutional constraints on a prosecutor's discretion to charge a defendant is imposed by the equal protection component of the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). Specifically, clear evidence must show that the decision whether to prosecute was not based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). "A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 517 U.S. at 464-65 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)).

The First Amendment also places a constitutional constraint. *Frederick Douglass Found., Inc. v. District of Columbia*, 2023 U.S. App. LEXIS 21240, *1-2 (D.C. Cir. 2023). The First Amendment prohibits government discrimination on the basis of viewpoint. *City of Madison Joint*

*Sch. Dist. No. 8 v. Wis. Emp. Relations Comm'n*, 429 U.S. 167, 175-76 (1976). "The protection for freedom of speech applies not only to legislation, but also to enforcement of the laws." *Frederick Douglass,* 2023 U.S. App. Lexis 21240 at *1.  Recently, in *Frederick Douglass,* the United States Court of Appeals for the District of Columbia held that the District of Columbia discriminated against the Frederick Douglass Foundation charging its members with violating a local ordinance prohibiting graffiti just months after "[t]he District all but abandoned enforcement of the defacement ordinance during the Black Lives Matter protests, creating a *de facto* categorical exemption for" Black Lives Matter protestors who engaged in identical conduct.  Discrimination was found because the Black Lives Matters protestors were allowed to write "Black Lives Matter" on the sidewalk, but the Frederick Douglas Foundation members were arrested for writing "Black Pre-Born Lives Matter" on the sidewalk.

Significantly, the Court of Appeals held that unlike the standard for a Fifth Amendment selective prosecution claim, discriminatory motive is not an element of a First Amendment free speech selective prosecution claim. The First Amendment prohibits discrimination on the basis of viewpoint irrespective of the government's motive.  *Id.* at *3.  Unlike Fifth Amendment claims where you may need evidence to show motive, in First Amendment claims the Court looks only to the conduct and the charges brought.  Specifically:

> In practice, courts must assess whether a plaintiff is similarly situated to a person against whom the law was not enforced across the relevant prosecutorial factors. Such factors may include "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte*, 470 U.S. at 607; *see also Beverly Health & Rehab. Servs. v. Feinstein*, 103 F.3d 151, 153, 322 U.S. App. D.C. 245 (D.C. Cir. 1996) (stating executive officials may balance "culpability, evidence, prosecutorial resources, and the public interest" in enforcement decisions).
> The factors will vary and cannot be reduced to a singular list. *See Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019). Determining whether a plaintiff is similarly

situated to those not prosecuted will be a fact-intensive and case-specific comparative inquiry.

*Id.* at *14

When compared to two comparators – the Kavanaugh protests of 2018 and the Portland riots of 2020 - Sahady's case supports both a First Amendment and a Fifth Amendment claim of selective prosecution.  The comparators both involved protests that are widely associated with expressing the views of the political left, whereas Mr. Sahady was charged while attending a protest widely associated with expressing views of the political right.  Mr. Shadady alleges that he was treated differently for arbitrary reasons or in the alternative based on his viewpoint.

When making comparisons with similarly situated individuals, it is important to note that not all January 6 defendants are equal. Of the hundreds of January 6 protestors charged over the last two-and-a-half years, some were accused of committing acts of violence and vandalism, while others, like Mr. Sahady, were not.  As a non-violent protestor, Mr. Sahady was similarly situated to the Kavanaugh protestors, specifically to Kavanaugh protestors Ana Maria Anchila and Maria Gallagher who accosted United States Senator Jeff Flake while he was in an elevator on his way to vote at the official proceeding to confirm Justice Kavanaugh.

January 6 and the Kavanaugh protests are fair comparators.  Both protests were organized mass rallies that attracted citizens from across the United States to protest the transfer of power in one of the three branches of the Federal Government. In both cases, an official proceeding was being conducted in the Capitol at the time of the protests.  The protests were proximate in time; the Kavanaugh protests were just over two years prior to the January 6 protest.  Both protests took place in restricted areas.  Protestors in both instances broke past police lines and "stormed" the Capitol, and in the case of the Kavanaugh protests, they stormed the Supreme Court and the Capitol's Hart Senate building.

On October 4, 2018, during the confirmation hearings of Justice Brett Kavanaugh,

A throng of protesters pushed past a police line, storming up steps to pound on the doors of the U.S. Supreme Court on Saturday after the Senate confirmation of Brett Kavanaugh.  "Hey, hey! Ho, ho! Kavanaugh has got to go," the protesters chanted as they flooded the steps of the court, many with fists raised in the air, others with arms linked.  Police eventually were able to form a line between the door and the group of protesters and later shepherded them back down the steps before erecting a barricade.  The protest at the Supreme Court came shortly after Vice President Mike Pence walked down the steps of the U.S. Senate to chants of "shame" after the vote to confirm Kavanaugh. Droves of protesters pressed up against metal barricades outside the Capitol Building to shout at Pence, who was forced to face their chants as he left.[4]

During the Kavanaugh protests, protestors in the Senate Chamber "obstructed an official proceeding" in the most literal sense.  Several protestors stood up and yelled during the proceeding, causing the proceeding to come to a halt until the protestors were forcibly removed by police.[5] During the official proceeding, two protestors, Ana Anchila and Maria Gallagher, physically accosted Senator Jeff Flake in the hopes of influencing his vote.[6]  Three hundred protesters were arrested by Capitol Police and charged with "Crowding, Obstructing, or Incommoding" for illegally entering the Capitol's Hart Senate building.[7]

While Sahady does not have access to the Government records, according to public news reports, the Kavanaugh protestors who engaged in conduct similar to Sahady were only charged with misdemeanors and sentenced to no more than fines amounting to $50 dollars.  There were no reports of Kavanaugh protestors being charged with 1512(c)(2) or any other felonies.  Specifically,

---

[4] https://www.nbcnews.com/politics/supreme-court/protests-build-capitol-hill-ahead-brett-kavanaugh-vote-n917351.  *See also* https://www.youtube.com/watch?v=Acn5FdMP2qc; https://www.youtube.com/watch?v=IRnmnxVtDqg&t=91s.
[5] https://www.youtube.com/watch?v=Jid6XBaTGr8; https://www.youtube.com/watch?v=KfWJGTwiP28&t=99s
[6] *See* https://www.youtube.com/watch?v=bshgOZ8QQxU&t=30s; https://www.youtube.com/watch?v=xGyniywVMZ0; https://time.com/5412444/jeff-flake-elevator-protester/.
[7] https://www.yahoo.com/news/penalty-amy-schumer-emily-ratajkowski-004137475.html

Ana Maria Anchila and Maria Gallagher, the two protestors who accosted a United States Senator inside the United States Capitol and delayed that Senator from voting at an official proceeding were not charged at all according to Pacer. Sahady and the Kavanuagh protestors, specifically Anchila and Gallagher, were similarly situated, yet only Sahady was charged with a felony and faces potentially 20 years in prison.

Another potential comparator is the Portland riots of 2020. According to the Government's Criminal Caseload Statistics of all 1512(c)(2) charges brought in all 94 federal districts from January 6, 2020 through January 6, 2022,[8] of the 324 charges brought during that period, 265 charges  - over 80 percent - were brought in the District of Columbia. Only 23 of the 93 other districts had any charges at all, with no district having more than 6 charges. Zero cases were brought in the District of Oregon, where the Portland riots occurred, including the burning of a Federal Courthouse where "official proceedings" are held.

In *United States v. Judd,* 1:21-cr-40, a January 6 defendant raised a selective prosecution defense using Portland as a comparator. *Id.* at Dkt #203. Though Judd's motion was ultimately dismissed, the Court found that "Judd's claim is nontrivial." Judd was accused of being part of the rioting by the Lower Western Terrace Tunnel, during the most violent activity on January 6. Judd was captured on camera throwing what appeared to be a firecracker at the police line. He argued that he received far harsher treatment than Portland rioters who engaged in similar activity, including a Portland rioter who threw a firecracker at police. The Court found the Government's disparate treatment of the Portland rioters to be "suspicious." *Id.* at 9 ("Rarely has the Government shown so little interest in vigorously prosecuting those who attack federal officers.").

---

[8] *United States v. Judd,* 1:21-cr-40, at Dkt #539-1; Dkt #539-2.

The Court ultimately denied Judd's motion because it found that "[t]he action in Portland, though destructive and ominous, caused no similar threat to civilians" because the rioters did not make it past the building that they set fire to, and the building was empty at the time. *Id.* at 10-11.

The Court's reasoning in Judd is not applicable to Sahady because, unlike Judd, Sahady is not charged with violent conduct. Sahady should be compared instead to the thousands of "peaceful protestors" in Portland who were not charged with any crimes, and were certainly not charged with felonies as Sahady is. These protestors, like Sahady, were protesting in a place where they should not have been.  Even though they did not enter buildings, the Portland protestors continued to protest after police had ordered them to disperse and after the City declared a curfew.[9] Thousands of these protestors were caught on camera and reported on the news, making it easy for the Government to identify them, yet only a few dozen people were ultimately charged. *See Judd,* 1:21-cr-40, Dkt #203, at 6.

Prior to January 6, 2021, 1512(c)(2) was reserved for defendants who engaged in conduct that related to Section 1512, specifically, witness tampering, the destruction or evidence, and obstructing criminal investigations.  A sample of the cases prosecuted between January 6, 2020 and January 6, 2022 demonstrates this.

- Waiel Anton was charged in the Southern District of California for conspiring with a "corrupt" sherrif whereby Anton provided cannabis dispensaries with advance warning of planned Sheriff's Department searches.   https://www.justice.gov/usao-sdca/pr/former-sheriffs-captains-accomplice-sentenced-prison-corruption-offenses.

- Jorge Diaz Gutierrez was charged in the Southern District of Florida for conspired with a federal agent who accessed and disclosed sensitive law enforcement information regarding ongoing criminal investigations into Diaz's criminal activities. https://www.justice.gov/usao-sdfl/pr/federal-agent-and-alleged-accomplice-charged-miami-federal-court-conspiring-distribute

---

[9] https://www.kgw.com/article/news/local/the-story/why-is-there-no-curfew-in-portland-oregon-protests-riots-downtown-justice-center-federal-officers-police/283-020db26b-e5c4-42eb-b25b-b2662348f5d7

- Devin Ryan was charged in the Southern District of Georgia for destroying evidence of a murder and then lying to investigators and grand jurors in the case. https://www.justice.gov/usao-sdga/pr/ex-con-accused-helping-destroy-evidence-and-lying-investigation-murdered-wife-fort

- Sterling Robinson was charged in the Eastern District of Louisiana for trying to influence a witness to lie to authorities in his criminal case.  https://www.justice.gov/usao-edla/pr/new-orleans-felon-convicted-gun-charge-shooting-new-orleans-east-neighborhood

- Dr. Ishtiaq Ali Saaem was charged in the District of Massachusetts for obstructing an investigation into his efforts to acquire the deadly toxin, ricin. https://www.justice.gov/usao-ma/pr/biotechnology-firm-director-sentenced-obstruction-justice-relating-attempts-acquire-ricin

- Dhaque Jones was charged in the District of Carolina for submitting materially false documents submitted as exhibits to Jones' habeas petition with a federal court. https://www.justice.gov/usao-wdpa/pr/pennsylvania-state-prison-inmate-charged-obstruction-justice

- Mark Edward Fuleihan was charged for obstructing the ability of law enforcement to monitor illegal gambling operations by, among other things, informing those gambling operators about planned law enforcement activity.  https://www.justice.gov/usao-sc/pr/former-florence-county-sheriff-s-lieutenant-sentenced-just-over-year-federal-prison-after

- Ashley Neice was charged in the Northern District of Texas for telling a sex trafficking victim to recant her statements to law enforcement and not say anything so that charges against her alleged trafficker would be dropped.  United States v. Neice, 3:20-CR-559-E, (N.D. Tex. Mar. 14, 2022)

- Jose Araujo was charged in the Southern district of New York for physically assaulting a potential witness to prevent the witness from testifying against him. https://www.justice.gov/archive/usao/nys/pressreleases/October13/PharmacyBurglariesPR/U.S.%20v.%20Edwin%20Araujo%20et%20al.%20Indictment.pdf

Sahady was a peaceful protestor in a restricted area and bares no similarity to any of those defendants.  Sahady should be compared to the many thousands of peaceful protestors who took to the streets during 2020, many in areas and at times when they were forbidden to do so, yet were not charged with felonies.

For these reasons, the Court should compel discovery regarding Mr. Sahady's selective prosecution claim.

**CONCLUSION**

For the foregoing reasons, the Court should grant the relief requested in this omnibus motion.

Dated: September 22, 2023                                  Respectfully submitted,

                                                          /s/ Eden P. Quainton_____
                                                          Eden P. Quainton
                                                          Bar No: NY 23017
                                                          Quainton Law, PLLC
                                                          2 Park Ave., 20th Fl.
                                                          New York, NY 10016
                                                          (212) 419-0575

                                                          /s/ Jonathan Gross
                                                          Jonathan Gross, Esq.
                                                          Bar No.: MD 0126
                                                          Quainton Law, PLLC
                                                          2833 Smith Ave, Suite 331
                                                          Baltimore, MD 21209
                                                          (443) 813-0141
                                                          jonathansgross@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing is being served on opposing counsel via ECF on

September 22, 2023

/s/ Jonathan Gross