UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| v.    ) | 1:21-cr-134 |
| ) | |
| **SAHADY** ) | |
| _____ ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Mark Sahady, by and through counsel, respectfully submits this sentencing memorandum and says as follows:

### INTRODUCTION

Attorney General Merrick Garland stated that there were two categories of protestors on January 6, violent and peaceful. Mark Sahady was the latter. As Mr. Sahady was only convicted of misdemeanors, the appropriate guidelines that should be applied are the sentencing guidelines for "Trespass," Section 2B2.3. According to the Judiciary Sentencing Information (JSIN) platform, there are no defendants who were sentenced under this guideline who received more than 1-2 months detention. Moreover, Mr. Sahady's codefendant, Susan Ianni, only received 10 days in prison. Mr. Sahady and Ms. Ianni were together the entire time on January 6, and their conduct was identical. Accordingly, he should receive the identical sentence.

### SENTENCING POST BOOKER

Sentencing courts are no longer constrained solely by the federal sentencing guidelines. *United States v. Booker,* 543 U.S. 220 (2005). The guidelines are now advisory and are but one of many factors. The sentencing Court "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States*, 552

U.S. 38, 39 (2007). An appropriate sentence is one that is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Aside from the guidelines, Section 3553(a)(2) looks to other factors such as the nature and circumstances of the offense, personal history and characteristics, the need for the sentence to reflect the seriousness of the offense and promote respect for the law, the need for adequate deterrence, and the need for unwarranted sentencing disparities.

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

On January 6, 2021, Mr. Sahady was among the thousands of protestors who entered the Capitol Building. He did not engage in any acts of violence or vandalism. Mr. Sahady organized several buses that brought a few hundred protestors to Washington, D.C. for the rally on January 6. No more than five passengers from those buses were arrested or accused of entering the restricted area or the Capitol Building, showing clearly that Mr. Sahady's purpose in coming to DC was peaceful. The Government's own video evidence shows that when he entered the Capitol Building, he followed the directions of the police and even gave a police officer a thumbs up. There is no video (or related photographic) evidence showing Mr. Sahady engaging in any violent conduct of any kind. Once inside the Capitol building, Mr. Sahady shows concern, not only to respect law enforcement, but to ensure the safety of Ms. Ianni. After spending only a few minutes in the building, Mr. Sahady and Ms. Ianni left peacefully, breaking away from the crowd of protestors who remained in the Capitol.

## THE CORRECT SENTENCING GUIDELINE SHOULD BE § 2B2.3

Mr. Sahady was convicted of 18 U.S.C. §§ 1752(a)(1), and 1752(a)(2). The Government acknowledges that the correct guidelines to be applied to § 1752(a)(1) should be § 2B2.3, which

designates a baseline offense score of 4. But the Government argues that the guideline for § 1752(a)(2) should be § 2A2.4, which designates a baseline offense score of 10.

Section 2B2.3 is appropriate for both counts because it falls under the general category of "Trespass." Section 2A2.4 is inappropriate because it falls under the general category of "Assault," and Mr. Sahady did not assault anyone. Section 2A2.4 in particular is for "obstructing or impeding officers." Hundreds of January 6 defendants have been charged with 18 U.S.C. § 231(a)(3) which is for obstructing or impeding officers, but Mr. Sahady was not.

The Government's proposed designation is clearly inappropriate. According to the Guidelines, if "the offense involved physical contact, or if a dangerous weapon (including a firearm) was possessed and its use was threatened," §2A2.3 would apply, and instead of the baseline offense level of 10, Mr. Sahady would only be designated the baseline offense level of 7. It makes no sense that Mr. Sahady's conduct which did not involve any assault or contact with police or a weapon should be designated a level 10, but had he threatened a police officer with a firearm or physically assaulted an officer his score would have decreased by 3 points, and he would be designated as a level 7. The Guidelines should not be construed in a fashion that would reward Mr. Sahady with a 3-point reduction for making physical contact with an officer or using a weapon.

The §2B2.3 designation makes the most sense because Mr. Sahady's conduct did not involve any assault, physical contact or possession or use of a deadly weapon, but rather comes within the common understanding of "Trespass." Accordingly, he should be designated as a base level 4, with the 2-point enhancement for §2B2.3(b)(1)(A). Accordingly, his appropriate offense level should therefore be 6, and with the 2-level reduction for §4C1.1, his baseline offense level score should be 4.

## PERSONAL CHARACTERISTICS AND ABSENCE OF CRIMINAL HISTORY

Mark Sahady is an honorable and upstanding citizen with no criminal record. He is an army veteran who was deployed to Afghanistan. He is extremely active in his local veteran community, including volunteering to feed local struggling veterans. He sits on the board of directors of his local VFW organization that raises funds and implements programs that lend support to local veterans, advocates on their behalf, and provides other charitable services that enhance veterans' lives. Letters from retired Air Force Colonel Julie Hall, retired Army Staff Sergeant John Galvin, and retired Army NCO Robert Demeo attesting to Mark's character are attached as **Exhibit E.**

Shockingly, the Government seeks to hold Mr. Sahady's military service against him as an aggravating factor (Dkt. 135, at 27), arguing that Mr. Sahady should serve a longer prison sentence because he served in the military. Were the Court to accept the Government's argument it would send the message to the public that an honorable history of military service can and will be used *against you* in a court of law. Similarly, the Government argues that Mr. Sahady's lack of criminal history, strong employment history, stable finances, good education, and supportive family are also aggravating factors. Dkt. 135, at 26. While the Government admits that "ordinarily" these are mitigating factors -- as they obviously should be – the Government argues that in the context of January 6, defendants like Mr. Sahady should be punished for these characteristics. *Id.* Whereas the Guidelines expressly advise rewarding defendants for a lack of criminal history, the Government argues that the Court should ignore the Guidelines, ordinary procedure, and common sense.

Mr. Sahady lives with his elderly parents, for whom he provides comfort and support on a daily basis. Indeed, the assistance that he provides to them is critical to their health and wellbeing. Mr. Sahady drives his parents to medical appointments, performs errands and grocery shopping,

and offers critical support in all areas of life. If Mr. Sahady is sentenced to months in prison, it will create a substantial hardship for his elderly parents. Letters from both of his parents and his brother attesting to his character and the care that he provides his parents are attached as **Exhibit F.**

## THE NEED FOR UNWARRANTED DISPARITIES

As the number of January 6 cases is approaching 1,600, it is easy for the Court to compare apples to apples based on the characteristics of the individual defendants and their conduct on January 6. For the purpose of comparators, there can be no distinction between defendants convicted at trial and those who pled guilty.

> It is clearly unconstitutional for a trial judge to increase the sentence of a defendant because he chose to go to trial rather than plead guilty. The Supreme Court has stated, "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). "In a series of cases beginning with *North Carolina v. Pearce*, 395 U.S. 711, 23 L.Ed.2d 656 and culminating in *Bordenkircher v. Hayes,* the Court has recognized this basic — and itself uncontroversial — principle." *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982).

*U.S. v. Jones*, 997 F.2d 1475, 1480-81 (D.C. Cir. 1993). According to the Government, any defendant who entered the restricted area is automatically guilty of all four of the boilerplate January 6 misdemeanors. Accordingly, there is no material distinction between a defendant who is convicted of all four misdemeanors and a defendant who was only convicted of one or two as a reward for foregoing his or her right to trial by accepting a plea deal with the government.

The following chart includes a small sample of January 6 defendants who were convicted either by plea deal or by trial and received no time in prison.

| MCNICOLL, Lois Lynn | 1:21-cr-00468 |
| --- | --- |
| LAVRENZ, Rebecca | 1:23-cr-00066 |
| TAGARIS, Jody Lynn | 1:21-cr-00368 |

| PARKS, Jennifer Ruth | 1:21-cr-00363 |
| KUECKEN, Deborah Anne | 1:23-cr-0006 |
| MAHONEY, Shawn Daniel | 1:24-cr-98 |

*Lois Lynn McNicoll.* According to the Government's sentencing memo, she entered the Capitol building at 2:55, walked through various areas of the building, and remained in the building until 3:33, for a total of 38 minutes. 1:21-cr-468, ECF 28, at 10-11. Unlike Ms. McNicoll who had to be "escorted from the Capitol," Mr. Sahady asked a police officer for directions, followed instructions, and exited the building on his own volition without the need for a police escort, before the police began to physically remove people from the building. The Government sought only 14 days' incarceration for Ms. McNicolli, but the Court ultimately sentenced her to no time in prison.

*Rebecca Lavrenz.* Ms. Lavrenz entered the building through the Columbus doors at 2:43, spent a few minutes in the Rotunda, and left through the Columbus doors at 2:53. The Court sentenced her to no time in prison.

*Jody Lynn Tagaris.* According to the Government's sentencing memo, Ms. Tagaris entered the Capitol through a window next to the Senate wing door "several minutes" after the initial breach, unlike Mr. Sahady who entered through a door. Ms. Tagaris entered the Senate breakout room and remained until she had to be ordered to leave by the police. Tagaris remained in the building for 20 minutes. 1:21-cr-368, ECF 20, at 6-7. The Government asked for 30 days incarceration for Ms. Tagaris, but she was ultimately sentenced to no time in prison.

*Jennifer Ruth Parks.* Ms. Parks entered the Capitol Building through an entrance where the doors had been broken and opened. She spent 15 minutes in the building. The Government

asked for no time in prison and only 30 days home detention, but she was sentenced to no time in prison or detention.

***Deborah Anne Kuecken.*** Ms. Kueken entered the building through the Columbus doors and left the same way after a few minutes. She was sentenced to 30 days home detention with no time in prison.

***Shawn Daniel Mahoney***, Less than one month ago, on October 23, 2024, a January 6 defendant with a criminal record was sentenced to no prison time, 24 months of probation, including 45 Days of Home Detention, 60 hours of community service within 12 months, a special assessment of $10 imposed as to each count, and restitution in the amount of $500. Mahoney's case is similar in many ways to Mr. Sahady's but in many ways it is objectively far worse. Mr. Mahoney ascended to the Capitol Building along the same path as Mr. Sahady, but Mr. Mahoney was among the first people to do so. He entered the building through the Senate Wing doors at 2:16. He was part of the larger crowd that entered the Crypt and pushed through the police line. Mr. Sahady was not part of that crowd and did not push through a police line. Unlike Mr. Sahady who did not enter any congressional offices, Mr. Mahoney entered an office, ate part of a stolen cupcake, and then "placed the half-eaten cupcake on a bust of Winston Churchill." Mr. Mahoney also had an extensive criminal history, including multiple arrests after January 6, 2021. The Government's sentencing memo in that case brought as comparators *Tippett,* a January 6 defendant with a prior criminal record who was sentenced to only 30 days in prison, and *Adkins,* a January 6 defendant with a prior criminal history who was sentenced to only 12 days of intermittent confinement.

Given the sentences for Mahoney, Tippett and Adkins, all of whom have prior criminal histories, Mr. Sahady, who has no prior criminal history, should not be sentenced to any term of incarceration.

**Exhibit A** is a list of over 200 January 6 defendants who were convicted and received sentences that did not include any time in prison. **Exhibit B** is a list of 99 January 6 defendants who were convicted and received sentences including 30 days detention or less. By singling out Mr. Sahady with a draconian punishment in comparison with other similarly situated J6 defendant, the Government appears to want Mr. Sahady to pay for being a member of Super Happy Fun America or for having outspoken views about the 2020 election. This is clearly inappropriate. Mr. Sahady cannot be punished for his association or his views and should not receive a harsher penalty than that imposed on others.

## RECOMMENDATION FOR SENTENCING

Because of his peaceful conduct on January 6, his impeccable character, his history of service to his country, his devotion to his family and community, and the need to avoid obvious sentencing disparities with other non-violent January 6 protestors, Mr. Sahady requests that this Court impose a sentence at the bottom of the Guidelines and sentence Mr. Sahady to 15 days home detention, 6 months of probation, 25 hours of community service, and a $500 fine. This sentence would be consistent with January 6 defendants who shared similar characteristics. This would satisfy the Government's desire for a harsher punishment for January 6 defendants, as it is a harsher sentence than the punishment he would have received for the same conduct at other events. As one example, Ruben Camacho received only 48 hours of community service for assaulting a female law enforcement officer engaged in the performance of her official duties. **Exhibit C.** Jason Charter, 1:20-cr-135, assaulted a police officer and a civilian, and destroyed a statute belonging to

the federal government in a restricted area during a civil disorder in June of 2020, and the Government only asked for 45 days in prison. He was sentenced to only probation and $2,600 in restitution. **Exhibit D.**

When considered in the context of January 6 punishments, this recommendation seems light. But when compared to what defendants like Camacho and Charter received for conduct that is objectively worse, the above recommended sentence is harsh and should satisfy the need for general and specific deterrence.

If the Court finds it necessary to impose a sentence involving detention, Mr. Sahady respectfully asks the Court to impose a period of home confinement so that he can continue to provide care for his elderly parents, who rely on Mr. Sahady for their health and wellbeing.

## CONCLUSION

For the reasons set forth above, Mr. Sahady respectfully requests that the Court sentence Mr. Sahady to 15 days home detention, 6 months of probation, 25 hours of community service, and a $500 fine.

DATED: November 13, 2024                    Respectfully submitted,

/s/ Eden P. Quainton
EDEN QUAINTON
QUAINTON LAW, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
(212) 419-0575
eden.quainton@quaintonlaw.net

/s/ Jonathan Gross
Jonathan Gross
Bar ID: MD0162
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify on November 13, 2024, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Jonathan Gross

Jonathan Gross